Good morning, Illinois Appellate Court, First District. Court is now in session in the Fourth Division. Justice Robert E. Gordon presiding. Case number 1-9-1-3-2-8, Jane Doe v. Lyft, Incorporated. Okay, would the lawyers who are going to argue the case please introduce themselves to the court. Good morning, Presiding Justice, Tim Tomasi. And if the court will indulge me, I'd also like to recognize my hard-working associates Emily Rose and Annie Showalter, who are in a virtual room due to Mr. Schaeffer's help, and also my co-counsel Tony Carvalho of Freeborn and Peters. All right, Appellant, will you you want to reserve some time for rebuttal? Yes, Your Honor, I'd like to preserve two minutes. Okay, well let's proceed. Thank you. Presiding Judge, may it please the court, Lyft is in the business of selling rides and transportation for profit in their own economic benefit. Like many other sufficiently similar providers of transportation, Lyft provides over 100 million rides a year to their passengers. In terms of their operation, Lyft doesn't deny that they're really any different than Yellow Cab, American Airlines, Amtrak, Greyhound, or even school buses. But all of those entities under Illinois law are held to the highest duty of care because the law recognizes that passengers surrender their control to the provider of the transportation. In fact, look, let me interrupt you for a minute, you know, I think it would be better served, you know, if you would argue the constitutionality of this statute. Very well, Your Honor, I'm perceived prepared to do that. Thank you. May it please the court, the TNPA section 25 is impermissible special legislation under Illinois law. The Illinois constitutional prohibition against special legislation prevents the government from advancing the interest of the few, like Lyft's economic benefit, against the detriment of many transportation providers, whether that be Yellow Cab or limousine, but more importantly to the detriment of passengers like Jane Doe, who, you know, according to the position Lyft has taken, had she just got into a flash cab, would have the full force and protection of the highest duty of care. And I would like to simply point out that I think Justice McMurrow, when she authored the best decision, summed it up so well when she brought from a lawmaker at the 1870 Constitutional Convention and emphasized that government may not aid one interest while oppressing another with the burden. And the position that Lyft has taken here is exactly doing that. It is oppressing not just the competitors, but other users of their product, their platform, who choose ride share or Lyft over a cab. The hallmark of the unconstitutional classification of an entity is its arbitrary application. 25E of the TNPA, as Lyft says it's to be intended to be interpreted, confers a special business, a special benefit to Lyft, but however, without any adequate or legal justification to the purpose of the statute. And that's what I would like to address here today. We all know the analysis involves a dual inquiry. Lyft concedes in their papers that other transportation providers, under these facts, that taxi cab companies, airlines, trains, would all have liability under these facts, pursuant to trial court recognized the same and said but for the language in the TNPA, Lyft would in fact be held to the highest duty carrier in all likelihood as a common carrier. We all know the cases that apply here and in applying the decision in best, it is certainly L&B, Woodfield Chevrolet, a very well-reasoned opinion by Justice Tom Fitzgerald. The constitutionality of the special legislation, we must look to the intent of the bill and in doing so, we will see that the position Lyft has taken and has taken their motion to dismiss, is not supported by Illinois, is arbitrary and does not support any legitimate state interest. And one thing we've done, your honors, is from the very beginning of our fight on this issue, is we focused on the intent of the bill. We did not go further than the sponsor of the bill who stated that the intent of this legislation was to protect the safety of our constituents. In fact, those were the words used when it was introduced 2774 onto the floor of the legislature. There was no mention of promoting competition or innovation and allowing innovation to flourish. But what we have done in our analysis, is we read the bill top to bottom and when you do that, every single provision goes to passenger safety and protecting the general welfare. Let's take a look at the bill. Zero tolerance for drugs and alcohol on behalf of the driver. No discrimination. All vehicles must be mechanically safe and consistent with with Illinois statutes. Emissions requirement to make sure the general public is protected. The identification of the driver must be made. And I'd like to point out that certainly exists with cabs as well. When you get into a cab, you see all the identification plus the license number for the cabin driver. There must be adequate insurance, compliance with other state law. And when we talk about safety, 2774 required a background check. So the bill top to bottom talks about safety. But as we know, and as Justice Fitzgerald did in the Allen case, and as the best court did, if there's a question about the intent of the bill, you can certainly look at the history pertaining to the bill. And when you do that, we've talked about the introduction of the bill. Nowhere in the bill itself does it talk about promoting competition. Nowhere does it talk about promoting innovation. Nowhere does it talk about excluding lift and ride share from the highest duty of care. And we need to point out that there is language. We see the moniker common carrier, which I'm going to talk about. And before I do, I'd like to point out that when we look at the debate that took place on the House floor, the Senate floor, and committee, there was no discussion on 2774 about common carriers. There was no discussion about the highest duty of care. Our legislature never, or the legislature's discussing this, never addressed in any way what it means to be a common carrier. We know, if you look at all the cases that we cited, whether you look at Sanchez, Green, McNerney, even the innkeeper cases such as Gress and Bogenberger, which borrow from the that we rely on in the restatement, they go on for pages as to what it means to be a common carrier and not a common carrier. And the legislature never made an effort to say we are excluding them from the highest duty of care. And we know that the Green case, which was the 2008 case, which held school buses, which were not common carriers, the highest duty of care, was good law. And the legislature was presumed to know that. But in terms of safety, and we've outlined it in our papers, what did the legislature's talk, what did our people in the General Assembly talk about? They talked about, aren't we picking a winner in a loser in an industry that provides the same service? There was a concern about unfair discrimination. Somebody asked, what about Joe the sex offender who's going to, who's going to protect against him? And at the same time, we have Uber and Lyft in the record texting and calling legislature saying that their agreement. Now, let's step back and look at the arbitrary nature and rushed nature this bill on the final day of the session was put through the legislature. And before I do that, I would like to point out that our legislature knows how to draft immunity provisions. They could have come out and explained what 25 N meant. They could have said that meant that they're not held to the highest duty of care. You know, equally true, common carrier means a lot of things. It means that the public with a common carrier shall be treated indifferently and transported. I still haven't heard, we still haven't heard how this is unconstitutional. Yes, Judge, it is unconstitutional because this bill, this bill unfairly creates a recovery gap and discriminates without a rational basis, not only against cabs and limos, but victims like Jane Doe, who had she got into a checker cab that evening, would have had the full protection of the highest duty of care as compared to the position Lyft takes that because of this bill, she does not. And if you take Lyft's position in terms of 25 N, which we believe is severable, being taken to its fullest extreme, this is what Lyft is essentially saying, and this is why it is not rationally supported by a legitimate state interest. So if we follow Lyft's position to their logical conclusion on constitutionality, we would have to accept this. Lyft says that they're not common carriers as defined under the statute because it is in the interest of the state of Illinois to allow this entrepreneurial innovative enterprise to flourish by granting them immunity and impunity from liability for brutal sexual assaults of female passengers by their drivers. That certainly is not a rational basis to hold them immune while other companies would be liable, while Jane Doe would have full protection under other circumstances. And that's why this is not rationally related to a legitimate state interest. And if I could, I'd like to direct the court to Justice Tom Fitzgerald's reasoning in Allen v. Woodfield Chevrolet, where he found that there was legislation in the consumer or special legislation in the consumer fraud statute that that unfairly conferred benefit to car dealerships. And I think it's very instructive in this case. So under that statute, consumer fraud that applied to all retailers, car dealers were given special notice provisions and offered judgment provision, which made it essentially impossible or unpractical for a consumer to be successful under the consumer fraud statute. Justice Fitzgerald, in analyzing that case, carefully went through and even looked at the legislative history and found that, you know, there was no lawsuit crisis that created or unfair legal fees or burden on the justice system. That a retailer is a retailer. There's no difference between a retailer that sells refrigerators, air conditioners, motorcycles, yachts, or cars. And cars are highly regulated by the Secretary of State. So, borrowing from that case, and, you know, we look at that case, Lyft is attempting to say that, you know, for some reason, even though they essentially provide the same service, they are different than, say, cabs and school buses who are non-common carriers held to the highest duty of care. And I strongly argue to the Court that the analysis we see in the Allen case and the analysis we see in the Best case demonstrate that Lyft here has taken a position that they are conferred a special benefit that no other provider transportation is. Special legislation here. Lyft is no different than cabs, Your Honor. They're really not, they really don't dispute that. In fact, a judge, the Circuit Court judge recognized that, but for the TNPA, they would likely be held to the highest standard. I mean, here, you can't paint stripes on a horse and call it a zebra. And I think that's the position Lyft is attempting to take. And I would also further point out, Your Honor, that if the courts are to follow Lyft's application of 25E, innocent victims like Jane Doe, who could have taken a cab and had more protection, will never recover against Lyft. Compounding matters, Lyft and other similarly situated providers of transportation will be disincentivized from operating with more safety. That is why this is special legislation. And, you know, we look to the floor debate. There was... You're past your time now, so you want to save some time for rebuttal. I do, Your Honor. Thank you. Can I ask a question before we move to the public? Mr. Tomasic, without common carrier liability, does the plan have had any cause of action against Lyft? We do have a cause of action for negligent hiring and retention. However, I believe it's in the pleading, there was another vendor, Sterling, that was, you know, performing background checks. And the reality of litigation is that, you know, Lyft is going to say it wasn't their responsibility, it was someone else's. We say that the position they've taken defies 100 years or decades of Illinois law, and Jane Doe is entitled the full force and effect of the highest duty of care, which is, of course, her best avenue of recovery. Okay, and one other question is, would you agree that TNCs, the transportation network companies, are a emerging or a new business? I say and take the position that TNCs, they're newer than cabs, they're newer than buses, but in way of their operation, using apps, using computers, using technology, smartphones, it's really no different than what American Airlines and Checker and everyone else does today. So in that sense, I don't really believe they're emerging. Okay, there, I don't know where I got this figure, I'm sure it was in somebody's brief, but there have been 13 states that have this legislation that have exempted Uber and Lyft from common carrier liability. Is there any other case out there from anywhere in the country that's addressed? I think it's 21, actually. 21? Yes. 21 cases. So I think what's important about that point is that the legislation is nearly identical. It's brand new, okay, this has just been on the books. From what we can see, this is the first case to actually get this question to a higher court, and we have to keep in mind, too, that other states, I mean, we know Idaho, Arizona, Texas, Virginia, West Virginia, and other states that have adopted it. We don't even know what their special legislation, if any, exists. So no other state has held this constitutional or unconstitutional, but we do point out the fact that common carrier, and sometimes motor carrier, which we know is a whole other body of law that applies, it's just a moniker that appears without further description. So I hope that fairly answers your question. Thank you. I don't have a question, but I want to say this now before I forget at the end. The briefs for both sides were really excellent, and I appreciate how you addressed every issue. They're just excellent for both sides. Thank you. Thank you, Justice Lamkin. Would it be helpful to the court for me to start with the constitutionality argument as well? Yes. So plaintiff's contention here really is that the state of Illinois is constitutionally required to govern TNCs by the heightened duties of the common carrier exception. Plaintiff bears a very heavy burden in challenging the constitutionality statute, as this court knows well. This court really has a duty to uphold that statute if it is reasonably possible to do so. As the court held in Dottie's Cafe, quote, we must presume that the challenge legislative enactment is constitutional. The challenger has the burden to establish that under no circumstances would the challenge act be valid. Plaintiff's position that the TNCA is unconstitutional special legislation is flawed for at least three reasons, which I'd like to enumerate. First, the test for evaluating the constitutionality of the statute is whether this court can conceive of a rational basis for the provision. And to do so, as I think both parties agree, the court is entitled to look at the legislative history. The excerpts of that legislative history alone comprise hundreds of pages in our appendix. It is a record that is teeming with the evidence of the hard work of legislators rolling up their sleeves and doing their over the course of many months and many versions to balance the objectives of the statute. The legislatures emphasized their efforts to manage what former minority leader Rodonio called the, quote, delicate balance between regulation and innovation. And the bill's sponsor, Representative Zalewski, recounted their painstaking efforts to do so. And if you spend some time reading those debates, you can actually hear his pain when he says that. It jumps from the page. To quote his colleague, they, quote, work their butts off to come up with a bill that took to heart the governor's concerns and struck right balance between innovation and regulation. That legislative record documents multiple legitimate aims to which the provision rationally relates, including the desire to permit this new industry to grow, to spur development, to meet the need of some of whom either didn't have access to transportation or felt that they were being discriminated against by existing transportation options, and the desire to bring competition to the existing. And of course, that record also reflected the desire to add safety protections, particularly since TNCs were subject to no statewide regulation at all at the time the bill was passed. Based on opinions authored by this court and many other courts, those are all rational and appropriate legislative aims, and it is rational that in serving those aims, the legislature would elect to leave the regulatory burdens on TNCs and their drivers where the black letter law of this state leaves them, as opposed to subjecting them to the exception that is based in the common carrier doctrine. This was not the discriminatory work of it was the hard work of normal legislation and of compromise. This court shouldn't substitute its judgment for that of the legislature. In their briefs and today, curiously, plaintiff's counsel seems to suggest that this court should basically disregard any aspect of the legislative record prior to Senate Bill 2774 being introduced. I think it's pretty telling that they view the legislative record as an The reply brief has a lengthy chart that is apparently designed to make the fairly obvious point that the TNPA is not identical to the bill that was vetoed by the governor, House Bill 4075, but the TNPA was nonetheless born from its ashes. There is no reason for this court to ignore that history, but even if the court did for some reason feel it should confine itself to the record of 2774 alone, there too is evidence of the desire to foster innovation and competition. And I think this is really critical because I'm confused by my learned opposing counsel's remarks. So just look at what Representative Harris said during the December debate. This is at A391 to 392. It's December 3rd. This is the second bill. Representative Harris rose and read portions of a Chicago Tribune editorial that praised Governor Quinn for vetoing the bill. The title of that editorial, by the way, was Veto of Ridesharing Bill Protects Innovation. Representative Harris urged that the taxi cab industry has had virtually a monopoly and the best way to defeat a monopoly is to introduce competition into the marketplace. And the ridesharing apps do that. They bring in competition. Plaintiffs' briefs also suggested that this court should evaluate the legislature's decision through the lens of the rideshares at their peak success. And when Justice Burke just asked Mr. Tomasik whether they could be considered innovative, I think there again he's sort of trying to answer the question as of today. But that's not the standard. The appropriate analysis is what the legislature saw way back in 2014 when President Obama was still in the White House, when Lyft had not yet had its second birthday, and when there was no statewide regulation of TNCs in Illinois at all. Most of us probably back then had not even heard of them. Further, even if there were no legislative history at all, this court could still do, as it did in Dottie's Cafe, use its good common sense to conceive of reasons why the legislature may have chosen this path. The court would not be the first to do so. Four federal appellate courts have considered whether TNCs may be regulated differently than taxi cabs. All concluded it is rational to do so. Were this court to conclude otherwise, it would, to our knowledge, become the first in any state to reach that conclusion. And after all, as Justice Burke highlighted, excuse me, Justice Lampkin highlighted, 20 other states have also introduced this language in their bills regulating TNCs. And to answer an issue raised in Plaintiff's reply brief and that was asked about today, 18 of 20 of those states, all but New Hampshire and Rhode Island, also have special legislation clauses in their constitutions. The site for that is a law review article we came across by Justin R. Long, State Constitutional Prohibitions on Special Laws, 60 Cleveland State Law Review 719. This court may well feel that the legislature's decision was not the one it would have made, but that is not the standard. Only a conceivable rational basis is required. Fortunately here, in addition to that good common sense, we have an enormous legislative record that is completely consistent with the reasons this court might otherwise have to hypothesize. Second point is that Plaintiff's argument is undermined by the limits to it that she concedes. Plaintiff takes no issue with any of the other ways in which the legislature has chosen to regulate taxi cabs and TNCs differently. Her claim is that Section 25e alone is favoritism, but Plaintiff never says why that should be so. If the court were to hold Section 25e unconstitutional as an arbitrary discrimination against taxi cabs, what will it do when TNCs sue and request the right to offer street health service? Or when the taxi cabs sue to contest the fair regulations that the city imposes? In the words of the Seventh Circuit upholding Chicago's TNC ordinance in the face of an equal protection challenge by taxi cabs, different products or services do not, as a matter of constitutional law and indeed of common sense, always require identical regulatory rules. The touch point is just that similarly situated entities not be discriminated against arbitrarily. By asserting Section 25e alone is unconstitutional, Plaintiff reveals why that actually can't be so. Third, Plaintiff says that Section 25e arbitrarily discriminates against taxi cabs, giving TNCs an unconstitutionally unfair advantage. She urges that the TNPA picked winners and losers, a phrase we heard Mr. Tomasik repeat today, and that the taxi cabs were the losers. But the taxi cabs actually supported the TNPA, as can be seen from Appendix 403. It would be very odd for them to do that if in fact they were the victims of discrimination, giving TNCs an arbitrary advantage. And Lyft, for its part, was actually neutral on the bill, as was Sidecar, another rideshare app that can be seen at Appendix 401. Plaintiff is fond of quoting the text message, which in my view only shows that at the time this bill was being debated, they didn't even know what Lyft's opinion of the bill was. And as they say, the final legislative record at A401 makes clear that Lyft took a neutral position on it. Unless there are questions, I can turn to the to the Section 25e, or I can conclude. No, I have a question. Ms. Stewart, are you contesting that this was special legislation? Yes, we are contesting that. Again, special legislation arbitrarily discriminates against a similarly such situated entity for no rational reason. Okay, but you did say that the TNCs are in direct competition with the cabs, right? Sure, they are. They're in competition with them, but again, they have meaningful distinctions that are reflected in the record in which all federal appellate groups who've considered the issue found were sufficient bases to regulate them on some differences. Right, but eliminating a major source of would seem to give them an unfair advantage. Would you agree with that? So, I would agree if they were identical and if it were arbitrary, but neither of those things is true. Again, first of all, we would disagree that these are identical companies. For sure, they have some similarities. There's no question about that, but they really do offer very different models. And again, it's easy now, sort of in 2020, to look at them through the lens of today, but turn back the clock to 2014, which is the time frame that mattered. You know, these really were pretty innovative so-called disruptor technologies that really took a totally different approach to the industry and to transportation than had occurred before. And as I say, every federal court who has considered exactly the question, are there sufficient differences between tax cabs on the one hand and TNCs on the other hand to regulate them differently, they have all concluded that they absolutely can't. By the way, Mr. Tomasik agrees with that. He says it's perfectly fine for them to regulate them differently. It's okay, presumably, for, you know, fares to be set for taxi cabs, but for the market to govern for TNCs. His position, as they say, at page 40 of his brief, is that it's just this provision. This is the only provision that is an irrational and unconstitutional mechanism. Thank you. Okay, well, let's hear the rebuttal at this point. Actually, if I have more time, I'd like to just conclude, perhaps, or does the court care to hear anything about 25E or is the court... Well, I think you've given your argument. Your time is, you know, is really gone. If there's something else you want to tell us, go ahead. Sure. Sorry, I thought I had 20 minutes. So, just the final point here. Go ahead. The kind of liability that plaintiff asserts for the claims at issue here is a very particular kind of liability. It's a liability that attaches irregardless of any negligence or wrong doing by Lyft, and that was something that the trial court acknowledged as well. As to answer one of the questions you asked earlier, the plaintiff here has at least three other paths to recovery. She has claims for negligence directly against Lyft. She has claims for fraud directly against Lyft. She has claims for negligence against the background check vendor, and in fact, last December, she filed another suit against Lyft alleging intentional infliction of emotional distress. It is black letter law of this state that precisely because sexual assault is so abhorrent, it is presumed to be outside the scope of... It precludes a finding that it was committed in the service of the principal, and for the particular counts that plaintiff is bringing in this appeal, she needs an exception to that rule to apply in order to be governed by anything else. For rational reasons, the legislature can decide not to extend such an exception, and it did. We think Section 25e is unambiguous and it is rational. TNCs are not common carriers and they shouldn't be treated as if they are. We would ask that the court affirm the trial court order. Ms. Stewart, do you think Green and Sanchez, which extended common carrier liability to school bus drivers, do you think those cases support or detract from your argument? I think those cases don't say much at all because they're very different from the situation we have here. So, first of all, in Green and Sanchez, one significant distinction is that there was no statute. There was no statute that said, you know, they are not common carriers, and in fact, as the court is probably aware, the Green case really anticipated that that was a possibility that could bring a distinction, and they specifically said the legislature, for sound reasons, could decide to adopt a different policy. The other thing about Green and Sanchez is that I think they bend over backwards to emphasize the narrowness of their holdings. They really are about school children on school buses, and the court relies on an extensive line of statutes that relate to that. It relies on a constitutional provision that they find supported, and they're very clear that they haven't been extended beyond that, and in fact, plaintiff has not cited a single case ever in which they were extended beyond that context. So, we think that they do not, you know, they do not alter the analysis. 25E says you're not common carriers. That means you can't be treated like a common carrier. If you then just had some other case come in and say, well, you're close enough, that defeats the purpose of 25E, when really what our obligation is to give the legislative language a fact. Thank you. Any further questions? No, thank you both. All right, let's hear the rebuttal, Bill. Thank you, Your Honor, and picking up Justice Burke with your question, I would like to point out in Doe versus Sanchez, and if you go to the third ultimate paragraph in that case, they ultimately came back to the finding that they are substantially similar to a common carrier, and the heightened duty is a non-delegable duty, and they said if an employer may be liable for its employee's conduct outside of employment, it has a non-delegable duty of care, but interestingly, then they went on to cite Flexman, which I believe is from 1882, where a brakesman on a train hit somebody with a lantern, deciding that vicarious liability has been well and alive in this state for some time, and that that case was not just limited to school buses, but the control over passengers. I'd like to just quickly just speak to the authorities, including DOTI's at consul's sites. DOTI's had to do with video gaming, but all these other cases were equal protection cases, taxis versus Uber. They had to do with credit cards and bridge tolls and all sorts of things. They were broadly based, taxi versus Uber. Here, it's just the 100-year rich tradition of common law duty of the highest duty of care, and I would point out that our common law, whether you look at common carrier, is always held life and limb is paramount in front of business interest, and that is why there's no rational basis here. Our legislature could have come out and said we are not holding them vicariously liable. We are not holding them to the highest duty of care. It's completely vague and bland, and the fact that other states mirror that, I think, goes to our point. And then in close, 4075 is a radically different bill. It never became law. It put the onus on companies. 2774 put it on drivers. Comparing their legislative history to 2070-74 would be like comparing the Articles of Confederation and saying they were part of the legislation of the U.S. Constitution, and my final remark would be this. If you're going to look at 4075, I would point you to A310 in the record with 4075, a representative, Jim Durkin, who's a well-known minority leader but a bipartisan representative in the record stated that as a family man, his concern is always that we look to common carriers such as cabbies, and basically these groups, these commercial transportation providers, they are always and have been traditionally held to a high standard of care, and there's a good reason for that, and to me it came very down to that. I think the person who's going to be behind the wheel needs to be insured. I think they need to be subject to the same type of background checks as cabs, and more important, being a father, that my nieces, my daughters that are going somewhere in the city of Chicago, that they're going to be safe with an or somebody with Uber. I believe you made some reasonable accommodations. I support this message. So clearly, clearly when it's come up, the only thing that's come up is that the highest duty of care should comply. They know how to draft immunity provisions. They do not do so here. It is vague, and for all these reasons, we ask that you find in our favor that this is special legislation. It's certainly supported by BEST. It's certainly supported by the Allen case, and Justice Burke, Justice Gordon, Justice Lampkin, thank you. Well, we want to thank the lawyers for the briefs that they gave. As Justice Lampkin said, they were very helpful, and we want to thank you for the good oral arguments that you gave us, and you will receive an order or an opinion very shortly. The court is now adjourned.